**O**

# United States District Court
# Central District of California

GEORGE JONES,

              Plaintiff,

    v.

ARNULFO ESTRADA, et al.,

              Defendants.

Case No. 2:21-cv-03417-ODW (ASx)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT [23]**

## I.    INTRODUCTION

Plaintiff George Jones applies for default judgment against Defendants Arnulfo Estrada and Rose Estrade for violations of the Americans with Disabilities Act ("ADA") at the Mariscos Agua Verde Restaurant in Wilmington, California. (Appl. Default J. ("Appl."), ECF No. 23.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Jones's Application.[1]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2021, Jones filed a Complaint alleging the following facts. (Compl., ECF No. 1.)

---

[1] After carefully considering the papers filed in support of the Application, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1    Jones uses a cane and a walker due to a medical condition that significantly
2    impairs his mobility.   (Compl. ¶ 1.)   In September 2020, November 2020, and
3    January 2021, Jones visited the Mariscos Agua Verde Restaurant at 625 W. Pacific
4    Coast Highway in Wilmington, California (the "Property").   (*Id.* ¶ 13.)   Defendants own
5    the Property where the Restaurant is located.   (*Id.* ¶ 2.)   Jones alleges several ADA
6    violations at the Property involving the disabled parking space and the men's restroom.
7    (*Id.* ¶ 20.)

8    Jones initiated this action against Defendants asserting two causes of action:
9    violation of the ADA and violation of the California Unruh Civil Rights Act ("Unruh
10   Act").   (*Id.* ¶¶ 31–57.)   The Court declined to exercise supplemental jurisdiction over
11   Jones's Unruh Act claim and dismissed that claim without prejudice.   (Min. Order 9,
12   ECF No. 15.)

13   Upon Jones's request, the Clerk entered default against both Defendants.
14   (Default by Clerk, ECF No. 20.)   Jones now moves for default judgment against both
15   Defendants.   (*See* Appl.)   He seeks an injunction under the ADA directing Defendants
16   to remedy the alleged ADA violations.   (Compl. Prayer for Relief ¶ 1.)

17                            **III.    LEGAL STANDARD**

18   Federal Rule of Civil Procedure ("FRCP") 55(b) authorizes a district court to
19   grant a default judgment after the Clerk enters default under Rule 55(a).  Fed. R. Civ.
20   P. 55(b).  Before a court can enter a default judgment against a defendant, the plaintiff
21   must satisfy the procedural requirements set forth in FRCP 54(c) and 55, as well as
22   Local Rules 55-1 and 55-2.   Local Rule 55-1 requires that the movant submit a
23   declaration establishing: (1) when and against which party default was entered;
24   (2) identification of the pleading to which default was entered; (3) whether the
25   defaulting party is a minor, incompetent person, or active service member; (4) that the
26   Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the
27   defaulting party was properly served with notice, if required under Rule 55(b)(2).  C.D.
28   Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "[A] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). In exercising discretion, a court must consider several factors (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the [FRCP] favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Generally, after the Clerk enters default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true, except those pertaining to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## IV.   DISCUSSION

Jones satisfies the procedural prerequisites to moving for default judgment, and the *Eitel* factors weigh in favor of issuing an ADA injunction to remedy two particular ADA violations in the men's restroom.

### A.   Procedural Requirements

The Clerk entered default against Defendants at Jones's request in accordance with FRCP 55(a). In compliance with Local Rule 55-1, Jones's counsel declares: (a) the Clerk entered default against Defendants (b) on the Complaint that Jones filed on

April 21, 2021; (c) Defendants are not infants or incompetent persons; (d) Defendants are not covered under the Servicemembers Civil Relief Act; and (e) Jones served Defendants with notice of this Application by first class United States mail on August 13, 2021.  (Decl. Anoush Hakimi ("Hakimi Decl.") ¶¶ 2, 5–6, ECF No. 23-4.)  Thus, Jones has complied with the procedural requirements for the entry of a default judgment.

**B.   *Eitel* Factors**

Once a plaintiff satisfies the foregoing procedural requirements, the court proceeds to exercise its discretion in entering default judgment, using the *Eitel* factors as a guide.  Here, the Court finds that the *Eitel* factors favor entry of default judgment against Defendants on Jones's ADA claim for two particular accessibility violations in the men's restroom.   The second and third *Eitel* factors are generally the most substantial in the ADA context, so the Court begins with those.

*1.   Substantive Merits and Sufficiency of Complaint*

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover."   *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (quoting *PepsiCo*, 238 F. Supp. 2d at 1175).  "[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  To weigh these two factors, the Court evaluates the merits of Jones's ADA cause of action.  The Court may properly consider the evidence Jones submitted as part of this analysis, as long as the allegations in the Complaint were sufficient to place Defendants on notice of the violation that was alleged.  *See, e.g., McComb v. Vejar*, No. 2:14-CV-00941-RSWL-E, 2014 WL 5494017, at *6 (C.D. Cal. Oct. 28, 2014) (examining plaintiff's evidence on default judgment to determine if removal of barrier was readily achievable).

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation . . . .'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). As relevant here, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). To succeed on his ADA claim, Jones must establish that (1) he is "disabled within the meaning of the ADA," (2) Defendants "own[], lease[], or operate[] a place of public accommodation," (3) Defendants denied Jones public accommodation because of his disability, (4) the store "presents an architectural barrier prohibited under the ADA," and (5) "the removal of the barrier is readily achievable." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007–08 (C.D. Cal. 2014) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)), *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020).

First, under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists walking as a "major life activit[y]." *Id*. § 12102(2)(A). Jones alleges that he uses a cane and a walker due to a medical condition that significantly impairs his ability to walk. (Compl. ¶ 1.) Jones's allegation thus establishes that he is disabled under the ADA definition.

Second, under the ADA, those who own, lease, or operate places of public accommodation are prohibited from discriminating against an individual on the basis of disability. 42 U.S.C. § 12182(a). Public accommodations include restaurants. *Id.* § 12181(7)(B). Jones alleges Defendants own the Property. (Compl. ¶ 2.) Jones also submits evidence that Defendants own the Property based on a search conducted on a real estate intelligence database. (Hakimi Decl. ¶ 3, Ex. 2.) This suffices to show that Defendants own a place of public accommodation subject to Title III of the ADA.

As to the third, fourth, and fifth elements, "a public accommodation shall maintain . . . facilities . . . readily accessible to and usable by persons with disabilities." 28 C.F.R. § 36.211(a). The standards governing compliance with the ADA are set forth

in the ADA Accessibility Guidelines ("ADAAG"), which is "essentially an encyclopedia of design standards." *Oliver*, 654 F.3d at 905.  Under the ADAAG, places of public accommodation that provide parking must provide accessible parking spaces, 2010 ADAAG §§ 208, 502, and those that provide bathrooms must provide at least one accessible bathroom, *id.* §§ 603–606.

### i.    Parking Space

Jones alleges that "[p]arking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property."  (Compl. ¶ 16.)  Although Jones alleges that the disabled parking space at the Property is "full" of ADA violations, (*id.* ¶ 20), Jones's Application focuses on a single parking space-related violation: that the accessible space and adjacent access aisles have surface slopes exceeding two percent, in violation of 2010 ADAAG § 502.4, (Appl. at 15).

Here, Jones fails to allege in anything but conclusory terms that decreasing the grade of the parking space surface is readily achievable.  Removal of an architectural barrier is "readily achievable" if it is "easily accomplishable and able to be carried out without much difficulty or expense."  *Acosta v. Martinez,* No. 1:19-cv-00307-AWI-EPG, 2020 WL 1026890, at *7 (E.D. Cal. Mar. 30, 2020) (citing 42 U.S.C. § 12181(9)).  In a recent matter of first impression, the Ninth Circuit found that "to satisfy their initial burden, ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances."  *Lopez*, 974 F.3d at 1038.  Under this approach, plaintiffs bear the initial burden of "articulat[ing] a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'"  *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

It is unmistakable after *Lopez* that the plaintiff bears this burden, meaning that conclusory allegations regarding readily achievable removal of a barrier are insufficient in the default judgment setting.  *See, e.g.*, *Soto v. Doublz of El Monte, Inc.*, No. CV 20-10296 FMO (SKx), 2021 WL 4733761, at *2 n.4 (C.D. Cal. Aug. 23, 2021).  Even

before *Lopez*, however, district courts in the Ninth Circuit regularly required plaintiffs moving for default judgment to make the "readily achievable" showing, either with well-pleaded factual allegations or evidence. *See, e.g., Sceper v. Trucks Plus*, No. CIV S-09-0801 GEB EFB, 2009 WL 3763823, at *3 (E.D. Cal. Nov. 3, 2009) (noting that fact that defendants have not appeared is more reason, not less, for courts to carefully enforce this requirement).

Here, Jones alleges only in the barest conclusory terms that Defendants could readily remedy the alleged ADA violations as a whole; his allegation that the Department of Justice has determined that removal of "these types" of barriers is likewise conclusory and devoid of facts. (Compl. ¶ 27.) Jones makes no attempt, with either his allegations or his evidence, to "articulate a plausible proposal" for altering the slope of the parking space or otherwise describe the cost or burden of correcting the violation. *See Lopez*, 974 F.3d at 1038. Accordingly, Jones fails to show entitlement to an ADA injunction relating to the parking space. *See Dunn v. Abrahamian*, No. CV 20-9713 FMO (AGRx), 2021 WL 1570831, at *2 (C.D. Cal. Mar. 9, 2021) (denying plaintiff's motion for default judgment for failure to plausibly show how cost of removing architectural barriers did not exceed benefits).

### ii. Restroom

When toilet facilities are provided, they must comply with the ADA. 2010 ADAAG § 603.1. Although Jones alleges thirteen separate ADA violations related to the Property's toilet facilities, (Compl. ¶ 20), his Application focuses on only three: the lack of water closet-adjacent grab bars, the incorrect placement of the toilet paper dispenser, and the incorrect placement of the flush control, (Appl. 15–16). Jones did not, however, allege a flush control violation in the Complaint. (Compl. ¶ 20.) He therefore cannot obtain injunctive relief related to the flush control. *Danning*, 572 F.2d at 1388.

First, grab bars must be provided and must be located on the side wall closest to the water closet and on the rear wall. 2010 ADAAG § 604.5. It is unclear from the

Complaint what exactly Jones initially alleged to be the grab bar violations because the grab bar allegations in the Complaint do little more than quote the ADAAG. Jones nevertheless establishes the lack of a grab bar with photographic evidence and an investigator declaration. (Decl. Marc Friedlander ("Friedlander Decl.") Ex. 1 at 5, ECF Nos. 23-4, 23-6.) This is sufficient to establish a grab bar violation.

In contrast to the parking space slope violation, it is evident based on common knowledge that installing grab bars is a reasonable and readily achievable way of removing an architectural access barrier. Grab bars enable those physically disabled people who would not otherwise be able to use the facilities at all to use them, and it enables other disabled people who would not be able to use the facilities independently to do so without help. For still others it lessens the burden and discomfort where using the facilities would otherwise be difficult. By contrast, a contractor can install two grab bars on an indoor wall at a reasonable expense. *See Grove v. De La Cruz*, 407 F. Supp 2d 1126, 1132 (C.D. Cal. 2005); 28 C.F.R. § 36.304(b)(12).

Toilet paper dispensers must be seven to nine inches in front of the water closet, when measuring to the centerline of the dispenser. 2010 ADAAG § 604.7. Here, Jones alleges and provides photographic evidence showing that the toilet paper dispenser is located more than nine inches in front of the water closet. (Friedlander Decl. ¶ 6, Ex. 1.) This is sufficient to establish a toilet paper dispenser placement violation.

It is likewise evident based on common knowledge that relocating a toilet paper dispenser is a readily achievable way of removing an access barrier. Without a properly placed toilet paper dispenser, a physically disabled person might have no way of reaching the toilet paper without first getting back into their mobility device. This is a substantial concern, especially compared to the cost of relocating a toilet paper dispenser. The ADA expressly includes the repositioning of paper towel dispensers as an example of a step to remove a barrier, 28 C.F.R. § 36.304(b)(17), and nothing in this case suggests that repositioning the toilet paper dispenser would be any less readily achievable.

8

In summary, Jones has sufficiently pleaded or proven the lack of grab bars and an improperly placed toilet paper dispenser, and he is accordingly entitled to an injunction directing Defendants to remedy these two ADA violations.

### iii. Doors

Jones's Application also includes a showing of ADA violations relating to the Property's front door, restroom door, and restroom door handle. (Appl. 16–17.) Jones's Complaint, however, did not include allegations relating to these violations. (*See* Compl. ¶ 20.) Defendants are not on notice of these violations, and due process requirements accordingly prevent the Court from entering judgment based on these violations.

### 2. Remaining *Eitel* Factors

The remaining *Eitel* factors support entry of default judgment on the demonstrated ADA violations. Jones will suffer prejudice if a default judgment is not entered because he will have no way to enforce his legal right to compel Defendants to remedy the ADA violations on the Property. *Eitel*, 782 F.2d at 1471; *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. There is little concern that the amount at stake is disproportionate to the harm alleged, *Landstar*, 725 F. Supp. 2d at 921, because the ADA's enforcement provisions provide for only injunctive relief, not money damages, *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1136 (9th Cir. 2002). Moreover, nothing in the record suggests Defendants' failure to appear is a result of excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177.

Although some possibility exists that Defendants have remedied the demonstrated violations, meaning that material facts would be in dispute, *id.*, that possibility is speculative and does not significantly weigh against entry of default judgment.

The final consideration is that "default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). However, when the defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. As Defendants failed to appear or otherwise respond, a determination on the merits is impossible, and this factor therefore does not prevent the Court from entering judgment by default. *See Duralar Techs. LLC v. Plasma Coating Techs., Inc.*, 848 F. App'x 252, 255 (9th Cir. 2021) (affirming entry of default judgment where all factors except this last one weighed in plaintiff's favor).

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Application for Default Judgment. (ECF No. 23.) The Court will issue Judgment containing an appropriately tailored ADA injunction.

**IT IS SO ORDERED.**

December 16, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**